**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESEE**
**AT KNOXVILLE**

| | | |
|---|---|---|
| Precision Tracking Solutions, Inc., | ) | |
| d/b/a GPS Secure-It, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Case No. 3:12-cv-00626-PLR-CCS |
| | ) | |
| Spireon, Inc. and Procon, Inc., | ) | |
| | ) | |
| *Defendants*. | ) | |

## MEMORANDUM OPINION AND ORDER

This breach-of-contract action is before the Court on the defendants' motion for summary judgment. [R. 49]. The defendants argue that the plaintiff waived its breach-of-contract claim by accepting benefits under the contract with knowledge of the alleged breach. Alternatively, the defendants argue that the plaintiff should be equitably estopped from asserting its claim for breach because the plaintiff "created in Defendants the reasonable belief that [the plaintiff] was satisfied with [their] performance under the Agreement, and [they] relied on that impression to their detriment." For the reasons discussed below, the defendants' motion for summary judgment will be denied.

i.

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 330 n.2 (1986); *Moore v. Philip Morris Co., Inc.*, 8 F.3d 335, 339 (6th Cir. 1993).

All facts and inferences to be drawn therefrom must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. Ltd v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Keifer,* 301 F.3d 937, 942 (6th Cir. 2002). Courts may not resolve genuine disputes of fact in favor of the movant. *Tolan v. Cotton*, 134 S.Ct. 1861, 1863 (2014) (vacating lower court's grant of summary judgment for "fail[ing to] adhere to the axiom that in ruling on a motion for summary judgment, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor") (internal quotations and citations omitted).

Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations. *Celotex*, 477 U.S. at 317. To establish a genuine issue as to the existence of a particular element, the nonmoving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the fact finder. *Id.* at 250. The Court does not weigh the evidence or determine the truth of the matter. *Id.* at 249. Nor does the Court search the record "to establish that it is bereft of a genuine issue of fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

ii.

Plaintiff Precision Tracking Solutions, Inc. ("Precision") contracted with defendant Procon, Inc. ("Procon") to become a reseller of Procon's GPS tracking devices, to distribute Procon products, and to provide other related services. The GPS devices are installed in cars purchased by customers in the "buy here pay here" market to allow dealers and lenders to disable the engines and locate vehicles for repossession if the borrower defaults on their loan. Pursuant to the distributor agreement (the "Agreement") signed June 18, 2008, Procon agreed to "make 'best efforts' to prevent the inadvertent contact and solicitation by Procon direct sales personnel of [Precision's] customers."

In November 2008 after the Agreement was in effect, Procon acquired Syslocate. In February 2009, the plaintiff learned that representatives of the newly merged company, still acting under the name Procon, had begun contacting Precision's existing customers directly and offering to undercut Precision's prices. Precision contacted Procon on more than one occasion demanding that Procon representatives stop trying to sell to Precision's customers. Each time, Procon representatives responded by promising to sort out the issue and prevent it from happening again.

On May 29, 2009, Procon sent Precision a new contract. Precision declined to accept, and on June 4, Precision wrote Procon to state that Precision was interested in continuing its relationship with Procon, but that it needed a nine-day extension of the current Agreement during which the parties could work out a new contract. Procon agreed to the short extension, and the parties began working on a new contract. When the parties had not agreed on a new contract by July 2, 2009, they again extended the agreement until July 20, 2009. In the end, negotiations were unsuccessful, and the Agreement was terminated. Between June 2009 and July 2009,

3

Precision lost 132 of its 162 customers, almost entirely it claims, as a result of Procon's alleged breach of the customer protection provision in the Agreement.

iii.

In their motion for summary judgment, the defendants first argue that Precision waived its breach-of-contract claim by accepting the benefits of the Agreement despite full knowledge of the defendants' breach. According to the defendants, Precision did this by accepting the benefits of the Agreement after the first learning of the defendants' improper customer solicitations in February 2009. Then, by requesting six-weeks of extensions to the original Agreement while attempting to negotiate a new agreement, the defendants argue that "Precision certainly took actions 'inconsistent with' its subsequent claim for breach of contract."

Waiver is the "voluntary relinquishment of a known right[,] established by express declarations or acts manifesting an intent not to claim the right." *94th Aero Squadron of Memphis, Inc. v. Memphis-Shelby Cnty. Airport Auth.*, 169 S.W.3d 627, 635-36 (Tenn. Ct. App. 2004). Negotiating with the breaching party does not constitute a waiver "where such action was the result of misrepresentation by the breaching party." *Id.* (quoting *W.F. Holt Co. v. A & E Elec. Co., Inc.*, 665 S.W.2d 722, 733 (Tenn. Ct. App. 1983)).

The *94th Aero Squadron* case is instructive. In that case, the breaching party, a lessee, repeatedly represented that it was attempting to cure its defaults. The lessor relied on the lessee's repeated assurances, and cooperated with the lessee in working towards an amicable resolution. During this time, the lessor continued accepting the lessee's rent payments. "By accepting those rental payments, Lessor was not waiving any breach on the part of Lessee because Lessee understood that it remained obligated under the lease to [cure the defaults]." *Id.* at 636. When it became apparent that the lessee was not going to fulfill its promises, the lessor

4

terminated the lease. Under those circumstances, the Tennessee Court of Appeals upheld the trial court's finding that the lessor did not waive his rights under the lease by accepting the rental payments. *Id.*

In this case, the plaintiff first became aware of the alleged breach in February 2009. They communicated their concerns with the defendants, who repeatedly assured the plaintiff that the problem would be taken care of. During negotiations, early that summer, when the plaintiff asked for two short extensions of the Agreement, it was in an attempt to reach an amicable resolution. A jury could reasonably conclude from this conduct that the plaintiff did not waive its right to assert a breach. Accordingly, the defendants are not entitled to summary judgment on their waiver theory.

### iv.

Next, the defendants argue that the plaintiff should be equitably estopped from asserting a breach-of-contract claim. Equitable estoppel prevents one whose "language or conduct leads another to do what he would not have otherwise done" from causing that person "loss or injury by disappointing the expectations upon which he acted." *McClary v. Midland Land & Dev. Co.*, 109 F. Supp. 847, 854 (E.D. Tenn. 1952) (citing *Molloy v. City of Chattanooga*, 191 Tenn. 173 (Tenn. 1950)). The elements of equitable estoppel include: "(1) words or actions that amount to a false or misleading representation by the party against whom estoppel is asserted; (2) reasonable reliance on the misrepresentation by the party asserting estoppel; and (3) detrimental or 'deleterious change' to the party asserting estoppel." *S.E.C. v. AIC, Inc.*, 2013 WL 5134411, at *3 (E.D. Tenn. Sept. 12, 2013) (citing *Jenkins Subway, Inc. v. Jones*, 990 S.W.2d 713, 722 (Tenn. Ct. App. 1999)).

5

According to the defendants, Precision implied that their behavior was appropriate under the Agreement because Precision failed to object to the improper solicitations once it learned about them in February 2009. Precision's attorney later told the defendants that it wanted to continue its business relationship with them, which the defendants claim indicates satisfaction with Precision's past performance under the contract. Finally, the defendants assert that Precision's requests to extend the agreement while they negotiated a new one gave the defendants the reasonable belief that Precision did not believe their conduct violated the "best efforts" clause. In reliance on all of these inferences, the defendants claim that they agreed to the (brief) extensions of the original Agreement and opened themselves up to continued liability for breach of contract claims based on conduct they thought was acceptable to Precision under the Agreement.

A jury could reasonably reject this argument. The plaintiffs *did* object to the allegedly improper solicitation of their customers. How the defendants characterize the plaintiff's behavior as implicitly endorsing their breach is a mystery. The fact that Precision wanted to continue doing business with the defendants and requested two brief extensions of the Agreement during which they could negotiate a new contract also does not indicate satisfaction with the defendants' past performance. The plaintiffs objected to their past performance and were actively negotiating with the defendants for stronger customer protection language in the new contract. Because a jury could easily find that one or more elements of the equitable estoppel claim are not met, the defendants' motion for summary judgment on these grounds will be denied.

For the foregoing reasons, the defendants' motion for summary judgment [R. 49] is **Denied**.

**It is so Ordered.**

_____
UNITED STATES DISTRICT JUDGE

ENTERED AS A JUDGMENT
  s/ *Debra C. Poplin*
CLERK OF COURT